UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

IGNATIUS GRIFFIN, *et. al.,*    )
                       )
        **Plaintiffs,**    )    **2:10-cv-01838 JWS**
                       )
      **vs.**    )    **ORDER AND OPINION**
                       )
**AEROSAT USA, *et. al.,***    )    **[Re: Motion at Docket 8]**
                       )
        **Defendants.**    )
_____)

## I.  MOTION PRESENTED

At docket 8, defendants Aerosat USA, LLC ("Aerosat"), DirecTV, Inc. ("DirecTV"), Douglas McChesney ("McChesney"), John Sellers ("Sellers"), Greg Cox ("Cox"), and Brian Crouthers ("Crouthers"; collectively "defendants") move to dismiss plaintiffs' complaint as insufficiently pled pursuant to Rule 12(b)(6) and Rule 8.  Plaintiffs Ignatius Griffin ("Griffin"), Teasha Griffin, and Vigstar Communications, LLC ("Vigstar"; collectively "plaintiffs") oppose the motion at docket 9.  Defendants' reply is at docket 12.  Oral argument was not requested, but would not assist the court.

## II.  BACKGROUND

This case arises out of allegedly discriminatory conduct by Aerosat and its employees against Griffin and Vigstar.  Aerosat is a satellite internet and antenna provider.  DirecTV is a satellite television provider that recently purchased Aerosat.  Vigstar is owned by Griffin and does satellite hardware installation.  On July 18, 2007, Griffin contracted to perform hardware installation for Aerosat and DirecTV pursuant to an Independent Contractor Agreement.  Griffin alleges that only a few months later Aerosat began to withhold work and otherwise discriminate against Griffin, who is African-American, in favor of other contractors.  Griffin alleges that the discriminatory treatment continued into 2008, that racial slurs were directed at him, and that ultimately his contract was improperly terminated without notice on April 21, 2008.

Griffin filed suit in Arizona state court, asserting claims for breach of contract, breach of the implied duty of good faith and fair dealing, intentional interference with a third-party contract, conspiracy, aiding and abetting, and violation of 42 U.S.C. § 1981.  Griffin's complaint lists respondeat superior, joint venture, and punitive damages as separate claims.  Griffin named Aerosat, DirecTV, McChesney, Sellers, Cox, and Crouthers as defendants. McChesney was the local General Manager for Aerosat; Sellers was the Vice President of Aerosat; Cox was the local Office Manager for Aerosat; and Crouthers was the General Manager of Aerosat.

## III.  STANDARD OF REVIEW

A motion to dismiss for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6), tests the legal sufficiency of a plaintiff's claims.  In reviewing such a motion, "[a]ll allegations of material fact in the complaint are taken as true and

construed in the light most favorable to the nonmoving party."[1]  Dismissal for failure to

state a claim can be based on either "the lack of a cognizable legal theory or the

absence of sufficient facts alleged under a cognizable legal theory."[2]  "Conclusory

allegations of law . . . are insufficient to defeat a motion to dismiss."[3]  To avoid

dismissal, a plaintiff must plead facts sufficient to "state a claim to relief that is plausible

on its face."[4]  "A claim has facial plausibility when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged."[5]  "The plausibility standard is not akin to a 'probability requirement'

but it asks for more than a sheer possibility that a defendant has acted unlawfully."[6]

"Where a complaint pleads facts that are 'merely consistent' with a defendant's liability,

it 'stops short of the line between possibility and plausibility of entitlement to relief.'"[7]  "In

sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,'

and reasonable inferences from that content, must be plausibly suggestive of a claim

entitling the plaintiff to relief."[8]

---

[1] *Vignolo v. Miller,* 120 F.3d 1075, 1077 (9th Cir. 1997).

[2] *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990).

[3] *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001).

[4] *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).

[5] *Id.*

[6] *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

[7] *Id.* (quoting *Twombly*, 550 U.S. at 557).

[8] *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

<u>**IV.  DISCUSSION**</u>

**A. Breach of Contract Claims**

Defendants argue that plaintiffs have failed to properly plead a claim for breach of contract.  Plaintiffs counter that they have adequately pled three breach of contract theories.  First, plaintiffs argue that "one or more" of the defendants promised a $100 bonus for installation work done on Thanksgiving and ultimately refused to pay.[9] Second, plaintiffs argue that Aerosat breached the Independent Contractor Agreement by terminating the contract without notice.  Finally, plaintiffs attempt to frame entitlement to lost profits as a separate breach of contract claim.  Regardless of what damages plaintiffs might be entitled to, they have only pled facts potentially giving rise to two breach of contract claims.

**1. Plaintiffs Have Not Adequately Pled a Breach of Contract Claim Relating to a Thanksgiving Bonus**

Plaintiffs' complaint alleges that "one or more" of the defendants "indicated that any volunteers performing work on Thanksgiving would receive an additional $100.00 in compensation."[10]  Even though plaintiffs have adequately pled harm resulting from this allegation, it is not "plausibly suggestive of a claim entitling [them] to relief."[11]  Plaintiffs have not pled facts that are plausibly suggestive of an enforceable promise. Rather, they have alleged that an unidentified defendant "indicated" that there would be a bonus

---

[9]Doc. 1-2 ¶ 41–43.

[10]*Id.* ¶ 41.

[11]*Moss*, 572 F.3d at 969.

for work performed on Thanksgiving.  Rule 8 requires a "statement of the claim showing that the pleader is entitled to relief."[12]  To meet that standard, plaintiffs would have to allege that an enforceable promise was made and identify the promisor.

**2. Plaintiffs Have Not Adequately Pled a Breach of Contract Claim Relating to Notice of Termination**

Plaintiffs' principal breach of contract claim centers on Aerosat's alleged failure to give thirty days notice of Griffin's termination.  A claim for breach of contract comprises the existence of a valid contract, breach, and damages.[13]  Plaintiffs have clearly pled the existence of a contract, and neither party has challenged its validity.

The first question is whether Aerosat breached the agreement by failing to give Griffin notice of termination.  Defendants argue that, consistent with the contract, Aerosat could "terminate the use of [Griffin's] services at any time without cause and without further obligation."[14]  Section VII of the Independent Contractor Agreement states:

> This Agreement shall commence on 07-18-2007 and shall expire on _____. [Griffin] agrees to perform the Work at the request of the [Aerosat] on or before the expiration of the term set forth above. [Aerosat] may terminate the use of [Griffin's] services at any time without cause and without further obligation to [Griffin] except for payment due for services prior to date of such termination.  Termination of this Agreement or termination of services shall not affect the provisions under Section IX-XV, hereof, which shall survive any termination.

---

[12]Fed. R. Civ. P. 8(a)(2).

[13]*Clark v. Compania Ganadera de Cananea, S.A.*, 387 P.2d 235, 238 (Ariz. 1963).

[14]Doc. 1-2 at 25.

> This Agreement shall automatically renew for a period of one (1) year unless either party provides written notification of cancellation at least thirty (30) days prior to the expiration date.

The contract is subject to different interpretations because the parties failed to specify an expiration date.  The first paragraph of Section VII is explicit, and establishes that Griffin was an at-will contractor.  Under one interpretation, the contract was to continue indefinitely.  The automatic renewal provision was therefore superfluous and the notice provision did not apply to termination.  Under a second interpretation, the contract would "expire" on the termination date, and notice would therefore be required.  Under a third interpretation, based on the automatic renewal provision, the expiration date was meant to be one year from the date of the agreement.  If the expiration date was meant to be one year from the date of the agreement, the notice provision might or might not have applied to Aerosat's unilateral termination, depending on whether termination constituted "cancellation."

Both parties maintain that the contract is explicit.  Given its ambiguity, Griffin's reading–that notice was required before termination–is plausible.  Griffin has alleged that he was not given any notice prior to Aerosat's termination of the agreement.  Under a plausible reading of the contract, failure to give notice would have constituted breach.

The next question is whether plaintiffs have adequately pled damages stemming from the alleged breach.  Defendants argue that because Aerosat could terminate the agreement "without further obligation" to Griffin, Griffin is unable to recover damages for breach of the contract.[15]  If that clause was intended to limit liability for breach, it is not

---

[15]*Id.*; doc. 8 at 3–4.

explicit.  Even assuming that was its intended function, however, Griffin has asserted

that Aerostat acted in bad faith.[16]  In Arizona, even though "[a] party may contract to

limit liability in damages for nonperformance of promises . . . [s]uch a provision is not

effective . . . if that party acts fraudulently or in bad faith."[17]  The notion that Aerosat

would be "without further obligation" to Griffin does not preclude Griffin's breach of

contract claim.

　　　　Plaintiffs maintain that Griffin's "profit-motivation" in performing the contract

"establishes his right to contractual damages in the amount of his loss [sic] profits."[18]

Plaintiffs cite *Martin v. La Fon* in support of this contention.[19]  That case, however,

stands for the proposition that lost profits may be recovered where one party agrees to

assign the rights to operate an ongoing business and "prospective gains or profits . . .

were within the contemplation of the parties at the time of the contract."[20]  The case at

bar does not involve assignment of rights to operate an ongoing business.  Even if

*Martin* did stand for the proposition that one party's "profit-motivation" rendered

expected profits recoverable, plaintiffs have not demonstrated any potential measure of

Griffin's expected profits.  Without offering some idea as to the expected number of jobs

---

　　　　[16]Doc. 1-2 ¶¶ 92–94.  The allegation in ¶ 94 is that "one or more of the Defendant [sic] have breached this implied duty of good faith and fair dealing."  That this applies to Aerostat is easily inferred because Aerosat and Griffin were parties to the contract.

　　　　[17]*Airfreight Exp. Ltd. v. Evergreen Air Ctr., Inc.*, 158 P.2d 232, 239 (Ariz. 2007) (quoting 15 Grace McLane Giesel, *Corbin on Contracts* § 85.18 at 471 (2003)).

　　　　[18]Doc. 9 at 2.

　　　　[19]100 P.2d 182 (Ariz. 1940).

　　　　[20]*Id.* at 199.

that Griffin might have performed–either for Aerosat, or for another company upon notice of termination–Griffin cannot adequately plead damages.

## B. Plaintiffs Have Adequately Pled a Breach of the Implied Covenant of Good Faith and Fair Dealing

Defendants argue that plaintiffs' bad faith claim fails because the claim is irreconcilable with Griffin's status as an at-will independent contractor.  Defendants rely on "[t]he general rule . . . that an implied covenant of good faith and fair dealing cannot directly contradict an express contract term."[21]  However, as discussed above, termination of the agreement may still have been subject to the notice provision.  Moreover, an at-will agreement does not nullify the covenant:  "Arizona law implies a covenant of good faith and fair dealing in every contract."[22]  "The implied covenant of good faith and fair dealing prohibits a party from doing anything to prevent other parties to the contract from receiving the benefits and entitlements of the agreement."[23]  It is not implausible that the hostile work environment alleged–encompassing an unfair distribution of work and race-based innuendo–prevented Griffin from receiving the benefits of the agreement.  Plaintiffs' breach of the implied covenant of good faith and fair dealing is adequately pled.

---

[21]*Bike Fashion Corp. v. Kramer*, 46 P.3d 431, 435 (Ariz. Ct. App. 2002).

[22]*Wells Fargo Bank v. Arizona Laborers*, 38 P.3d 12, 28 (Ariz. 2002).

[23]*Id.*

**C. Neither Plaintiffs' Intentional Interference With Contractual Relations Nor 42 U.S.C. § 1981 Claim Is Barred by the Applicable Statute of Limitations**

Defendants argue that plaintiffs' claims for intentional interference with contract and violation of 42 U.S.C. § 1981 are barred by the statute of limitations. Plaintiffs counter that all claims accrued on April 22, 2008, because that was the date that Griffin learned of the contract's termination. The statute of limitations period for intentional interference with a third-party contract is two years.[24] "[A] tort claim accrues when a plaintiff knows, or through the exercise of reasonable diligence should know, of the defendant's wrongful conduct."[25]

The elements of intentional interference with contractual relations are "(1) the existence of a valid contractual relationship, (2) knowledge of the relationship on the part of the interferor, (3) intentional interference inducing or causing breach, (4) resultant damage to the party whose relationship has been disrupted, and (5) that the defendant acted improperly."[26] The third element requires that the third party's interference cause breach. Therefore, without breach, there can be no claim. Griffin could not have known that he would have a claim for intentional interference with contractual relations until the contract was breached. Accordingly, plaintiffs' claim for intentional interference with contractual relations accrued when Griffin learned of what he believed to be a breach of the Independent Contractor Agreement.

---

[24]A.R.S. § 12-542; *Clark v. Airsearch Mfg. Co.*, 673 P.2d 984, 987 (Ariz. Ct. App. 1983).

[25]*Taylor v. State Farm Mut.*, 913 P.2d 1092, 1095 (Ariz. 1996).

[26]*Wells Fargo Bank v. Arizona Laborers*, 38 P.3d 12, 31 (Ariz. 2002).

Defendants argue that April 21, 2008, was the latest possible accrual date, because that was the date the e-mail terminating the agreement was sent.  Plaintiffs argue that Griffin did not receive the e-mail until April 22, 2008.  Taking plaintiffs' factual allegations as true, and construing those allegations in the light most favorable to plaintiffs, Griffin did not learn of the alleged breach until April 22, 2008.  Plaintiffs' claim for intentional interference with a third-party contract did not accrue until that date.  Because plaintiffs's lawsuit was filed on April 22, 2010, plaintiffs' intentional interference claim is not barred by the statute of limitations.  This conclusion is bolstered by the observation that Arizona "courts generally disfavor a statute of limitations defense."[27]

Defendants also argue that plaintiffs' 42 U.S.C. § 1981 claim is barred by the statute of limitations.  The applicable statute of limitations period for this claim is also two years.[28]  The thrust of plaintiffs' § 1981 claim is that Griffin's termination was based on his race.[29]  Accordingly, the claim accrued when Griffin learned of his termination on April 22, 2008, and the claim is not barred by the statute of limitations.  The court also notes that "acts occurring more than two years before" the suit was filed "may be relevant background material in support of [plaintiffs'] timely claim."[30]

**D. Plaintiffs' Conspiracy and Aiding and Abetting Claims Are Inadequately Pled**

Defendants argue that plaintiffs' conspiracy claim is inadequately pled.  Plaintiffs offer no response.  Specifically, defendants maintain that plaintiffs' conspiracy claim

---

[27]*Porter v. Spader*, --- P. 3d ----, 2010 WL 3637551, at *5 (Ariz. Ct. App. 2010).

[28]*Cholla Ready Mix, Inc. v. Civish*, 382 F.3d 969, 974 (9th Cir. 2004).

[29]Doc. 1-2 ¶ 116.

[30]*Cholla*, 382 F.3d at 975.

does not identify "an underlying tort which the alleged conspirators agreed to commit."[31]

Even though plaintiffs have alleged one identifiable tort–intentional interference with

contractual relations–they have not adequately pled their conspiracy claim.  Plaintiffs'

complaint states only that "two or more of the [d]efendants . . . agreed to the violation of

their duties and obligations" and that "one or more of the[] [d]efendants have improperly

denied" plaintiffs of their rights.[32]  The court agrees with defendants that these vague,

conclusory allegations fall short of the federal pleading standard.  Plaintiffs' complaint

neither identifies the tort upon which the conspiracy was founded nor the conspirators.

Consequently, plaintiffs allegations are impermissibly speculative.[33]

        Defendants argue that plaintiffs' aiding and abetting claim is similarly vague and

speculative.  The court agrees.  Plaintiffs' complaint states only that "[o]ne or more of

the[] [d]efendants knew at all time[s] they were aiding and abetting this specific type of

misconduct alleged."[34]  This falls well short of the requirements of Rule 8.  Plaintiffs

must actually identify the "specific type of misconduct," identify which defendants aided

and abetted that specific misconduct, and allege facts giving rise to a plausible

inference of substantial assistance or encouragement.

---

[31] *Wells Fargo Bank v. Arizona Laborers*, 38 P.3d 12, 36–37 (Ariz. 2002).

[32] Doc. 1-2 ¶¶ 109, 110.

[33] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

[34] Doc. 1-2 ¶ 113.

**E. Respondeat Superior and Joint Venture Are Not Independent Legal Claims and Insufficiently Pled as Theories of Vicarious Liability**

Neither respondeat superior nor joint venture is a separate legal claim.  They are theories of liability.  In order to rely on a theory of respondeat superior, plaintiffs must plead facts giving rise to a reasonable inference that specific defendants were acting within the scope of their employment at particular times.  While plaintiffs' complaint makes clear that they intend to hold Aerosat responsible under a theory of respondeat superior, they found their intention on the conclusory allegation that "[a]t all relevant times [d]efendants acted within the course and scope of their employment [at] Aerosat."[35]  Plaintiffs' statement does not state a plausible claim for relief based on respondeat superior and is therefore inadequately pled.

Plaintiffs' alternative ground of vicarious liability–joint venture–is also insufficiently pled.  The allegations in the complaint are conclusory: plaintiffs' maintain only that "[d]efendants have held themselves out at all times as members of the same joint venture between them."[36]  The elements constituting a joint venture are "(1) an agreement, (2) a common purpose, (3) a community of interest, (4) an equal right of control, and (5) participation in profits and losses."[37]  The fifth element does not apply if the joint venture is not for business.[38]  In order to rely on a joint venture theory, plaintiffs

---

[35]Doc. 1-2 ¶ 97.

[36]*Id.* ¶ 105.

[37]*Estate of Hernandez v. Flavio*, 930 P.2d 1309, 1312 (Ariz. 1997).

[38]*Id.*

must plead facts giving rise to a plausible inference that the appropriate elements are met.  "Joint venture" does not stand as an independent claim for relief and in the absence of properly pled facts is unavailable as a theory of vicarious liability.

**F. Punitive Damages**

Defendants' final argument is that plaintiffs' punitive damages claim should be dismissed.  The court agrees to the extent that punitive damages are a remedy and not a claim.  However, plaintiffs are not precluded from seeking punitive damages.  Defendants maintain that because plaintiffs' "tort claims should be dismissed, their punitive damages claim must also be dismissed."[39]  The court has elected not to dismiss plaintiffs' tort claim, and plaintiffs may still pursue punitive damages.  Defendants also argue that plaintiffs "have failed to plead any facts alleging that [d]efendants acted with evil intent or actual malice."[40]  The court disagrees.  Plaintiffs have alleged that racial animus played a decisive role in the decision to terminate the Independent Contractor Agreement and therefore, that defendants' "wrongful conduct was motivated by spite."[41]

**G. Leave to Amend**

"[I]n dismissing for failure to state a claim under Rule 12(b)(6), 'a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of

---

[39]Doc. 8 at 9.

[40]*Id.*

[41]*Lange v. Penn Mutual Life Ins. Co.*, 843 F.2d 1175, 1182 (9th Cir. 1988).

other facts."[42]  Sections of plaintiffs' complaint are alarmingly deficient and plaintiffs did

not request leave to amend.  Nevertheless, a "court should freely give leave [to amend]

when justice so requires."[43]

## V.  CONCLUSION

For the reasons set forth above, defendants' motion at docket 8, to dismiss

plaintiffs' claims pursuant to Federal Rules of Civil Procedure 8 and 12(b)(6), is

**GRANTED** in part and **DENIED** in part as follows:

(1) The motion is **GRANTED** to the extent it seeks to dismiss plaintiffs' breach of

contract, conspiracy, and aiding and abetting claims for failure to comply with the

requirements of Rule 8.  Those claims are **DISMISSED** without prejudice to an

amended complaint.  Any such amendment must be filed within **14 days** of this order.

(2) The motion is **DENIED** to the extent it seeks to dismiss plaintiffs' claims for

breach of the implied covenant of good faith and fair dealing, intentional interference

with a third-party contract, and violation of 42 U.S.C. § 1981.

(3) The motion is **GRANTED** to the extent it seeks to dismiss plaintiffs' claims for

respondeat superior, joint venture, and punitive damages. They are **DISMISSED** as

---

[42]*Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (quoting *Doe v. U.S.*, 58 F.3d 494, 497 (9th Cir. 1995)).

[43]Fed. R. Civ. P. 15(a)(2).

separate claims, but not foreclosed as theories of liability if adequately pled in the

amended complaint.

DATED this 1st day of November 2010.


/s/ JOHN W. SEDWICK
UNITED STATES DISTRICT JUDGE